**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 11-cr-20345

v.                                          HON. ARTHUR J. TARNOW

JOSEPH MCMULLIN,

        Defendant.

_____

**DEFENDANT COUNSEL'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)**

NOW COMES Defendant Joseph McMullin, by his appointed counsel, Haralambos Dimitrios Mihas, in supplemental response to Mr. McMullin's *pro se* Motion for Compassionate Release, as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

Joseph McMullin is 51 years old and at the tail end of a 15-year sentence. His release date is April 24, 2024, but he is also afflicted with multiple medical conditions that could kill him if infect with the COVID-19 virus. Currently housed in Butner FCI Medium II, he is being treated for heart disease, high cholesterol, hypertension, kidney disease, and diabetes. See ECF 88, Request to Warden For Compassionate Release, 7/10/2020, Any one disease combined with a COVID-19 infection could result in serious complications or death. Together, they would present an almost impossible task for doctors if Mr. McMullin fell ill with COVID-19

Mr. McMillen finds himself in BOP custody after he pled guilty to felon in possession of a firearm, armed career criminal, in violation of 18 U.S.C. §§ 924(g)(1)

and 924(e)(1). See ECF 9, Indictment, 5/2620100; ECF 38, Plea Agreement, 6/4/2012. The conviction stemmed from a May 3, 2011 encounter with Detroit Police officers. Responding to a breaking and entering in process, officers came across Mr. McMullin. Officers saw a loaded .38 caliber revolver in Mr. McMullin's waistband. Id at 2. Previous state convictions for felonious assault and fleeing and eluding, 3rd degree (1998), delivery of cocaine and possession with intent to deliver cocaine (2000), and delivery of a controlled substance (2002) classified Mr. McMullin as an armed career criminal. U.S.S.G. § 4B1.3. Although his guidelines were 151 to 188 months, the sentencing judge, the Honorable Julian Cook, was bound by a 15 year year mandatory minimum sentence. See ECF 38, Plea Agreement, Worksheet D. On October 4, 2012, Judge Cook sentenced Mr. McMullin to 180 months in prison. See ECF 44, Judgment, 10/4/2012.

## ARGUMENT

### A.     Exhaustion of Administrative Recourses

"[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment**."** 18 U.S.C. § 3582(c)(1)(A). Mr. McMullin submitted his "Request to Warden for Compassionate Release" on July 10, 2020. See ECF 88. More than 30 days have passed since Mr. McMullin submitted his request. The Court has jurisdiction to consider the merits of his request.

### B. Extraordinary and Compelling Circumstances

The Cares Act, which allows the Court to evaluate this matter does not give guidance on what it believes constitutes "extraordinary and compelling" circumstances. "To determine what the Sentencing Commission considers 'extraordinary and compelling,' the Court turns to United States Sentencing Guidelines §1B1.13." *United States v. Cantu*, 423 F. Supp. 3d 345, 349 (S.D. Tex. 2019) (citing 28 U.S.C. §994(t)). "However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act, and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582, as amended." *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La, April 2, 2020) "[T]his discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act." Id. (citation omitted). "While the old policy statement provides helpful guidance," *United States v. Beck*, 425 F.Supp.3d 573 (M.D.N.C. 2019), numerous other courts who have ruled on this issue have held that they have the "discretion to determine what constitutes an 'extraordinary and compelling reason[]' on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive," *Perdigao*, 2020 WL 1672322, at *2 (citation omitted); The result is broad latitude for the Court to decide what constitutes "extraordinary and compelling" circumstances for compassionate release, that extends Court authority to grant compassionate release past medical vulnerability to COVID-19.

The Court is well aware of the danger that COVID-19 presents to Mr. McMullin. Prisons present virtual petri dishes for infection. By nature, they do not allow for social

distancing. Resources are scare, and personal protection equipment is difficult to find. Inmates are unable keep their personal spaces consistently sanitized. Mr. McMullin finds himself especially vulnerable, more so than most people. At 51 years old, he is nearing the age that the CDC indicates is vulnerable for serious complications or death if infected with COVID-19. Currently, he battles heart disease, high cholesterol, hypertension, kidney disease, and diabetes. Any one of these conditions in combination with COVID-19 could establish "extraordinary and compelling circumstances" for release, as infection could end Mr. McMullin's life. Together, Mr. McMullin finds himself in the cross-hairs for serious complications if he contracts the novel corona virus. Worse, the BOP's methods for controlling the virus are to lock down many of its facilities, including Mr. McMullin's facility at Butner. Without regular exercise, Mr. McMullin's underlying conditions will further degrade. His conditions, together with COVID-19, gives this Court "extraordinary and compelling circumstances" for compassionate release.

### C. SAFETY TO THE COMMUNITY

Mr. McMullin's criminal history forced his sentencing judge, Judge Julian Cook, Jr., to sentence him to 180 months in prison. As an armed career criminal, Congress at the time deemed him a threat to society and wanted to send a strong message to repeat offenders. In finding extraordinary and compelling circumstances, this Court is able to review Mr. McMullin's current status, including his progress and history during incarceration.

A review of Mr. McMullin's incarceration indicates he is a man who is ready to return to society. His disciplinary history is sparse. There are five incidents, all but one

is for insolence to staff or refusing to obey an order.  Those date back to July 2016. The last incident was a fight in September 2018.  Mr. McMullin claims he was defending himself against the instigator. (See Exhibit 1, Inmate Disciplinary Data) Mr. McMullin has also used his time to work on himself, including parenting class and anger management in the work place.  (Exhibit 2, Inmate Education Data) In addition, Mr. McMullin is trusted by the BOP to work as a butcher, a skill he intends to use to provide for himself when he is released.

    D.     18 U.S.C. § 3553(a) Sentencing Factors

*Nature of the offense and History and Characteristics of the Offender:*

Possession of a firearm by a felon is a threat to the safety of others.  At the time, Mr. McMullin had ten felony convictions, mostly for low-level drug dealing and drug possession. (PSR ¶¶ 29-39, 100)  His past designated Mr, McMullin as an Armed Career Criminal.[1]  A long term sentence was necessary, pursuant to the law in place at the time.

However, in reviewing Mr. McMullin's time in prison, he is a different person, mentally and physically.  He is at an age where statistics indicate that he unlikely to commit new crimes.  In addition, his conditions physically restrain Mr. McMullin's ability to "run wild" and commit new crimes.  More importantly, his disciplinary record shows a man who has matured and is able to live within the boundaries set by society.  In prison, he works, attends classes, and takes care of his heath, just as he would if he were release.  18 U.S.C. § 3553(a) - History and Characteristics of the Offender; *see,*

---

[1] Absent the Armed Career Criminal Enhancement, Mr. McMullen scored an offense level of 24, minus three levels for acceptance of responsibility.  He was scored at a criminal history level V.  His guidelines would have been 151-188 months in prison. ECF 38, Plea Agreement

*e.g. Pepper v. United States,* 562 U.S. 476 (2011)(held that the punishment must fit the offender and not just the crime, the sentencing court is able to consider post-sentencing rehabilitation in crafting a new sentence).

***Seriousness of the Offense, Promoting the Law, and Providing Just Punishment:*** Mr. McMullin has already served 124 months in prison for this offense. The underlying crime was not itself assaultive; rather, it reflected his status as a felon who had lost his right to possess a firearm.  His time already served meets the goals set forth in this factor.  A decade in prison reflects the seriousness of the offense and provides just retribution for disregarding the law.  18 U.S.C. § 3553(a)(2)(A)

***Deterrence:***  Likewise, a decade in prison is enough to deter Mr. McMullin from committing more crimes, and sends a somber message to those who would seek to follow Mr. McMullin's path.  A sentence of time servied is sufficient to deter Mr. McMullin and other from engaging in criminal activity.  18 U.S.C. § 3553(a)(2)(B)

***Provide needed educational or vocational training, medical care, or other correctional treatment in the most effective manner***: At this point, there is nothing more that the BOP can provide Mr. McMullin.  He has taken classes and programs to reform himself.  He works as a butcher, and eventually hopes to own his own business using his craft.  In the meantime, he also has employment waiting for him at Imyotech Telecom Services in Sterling Heights.[2]   Mr. McMullin plans to live with his cousin, Patrina Wilson in Melvindale, Michigan.  In addition to his family and friends, the Court and the probation department will craft conditions that will further assist Mr. McMullin's

---

[2] Imyotech Telecom Services is a telecom company that integrates 5g internet service and delivers no-touch freight.

transition into society, including additional therapy for drug addiction.[3]

## CONCLUSION

Mr. McMullin has a past, a serious one that placed him in BOP confinement for the last 10 years.  However, that past does not warrant a life sentence.  The risk Mr. McMullin faces with COVID-19 in the prisons and his medical conditions is extraordinary and compelling.  It opens the door for compassionate release.  Mr. McMullin's actions in prison for the past decade now warrant his release.  They indicate that he is no longer a threat to the community and, if re-sentenced, a sentence of time served would meet the factors set forth in 18 U.S.C. § 3553(a).

                           Respectfully Submitted

                           **SMITH MIHAS PLLC**

                           /s/ Haralambos D. Mihas
                           Haralambos D. Mihas, P66475
                           Attorney for Joseph McMullin
                           467 Eureka Road, Suite 1
                           Wyandotte, Michigan 48192
                           (734) 692-3033
                           hdmihas@smithmihas.com

Dated: September 25, 2020

---

[3] Mr. McMullin's drug past indicates that he would have been a prime candidate for the BOP's R-DAP program.  Unfortunately, the fact that his conviction was a gun offense disqualified him for the program.

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that I served the attached supplemental response on both the Court and all interested parties through electronic mail through the Court CM/ECF electronic filing and service system on September 25, 2020.

/s/  Haralambos D. Mihas
Haralambos D. Mihas, P66417
Attorney for Joseph McMullin