UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH MCMULLIN,

    Defendant.

                                    /

Criminal Case No. 11-20345

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING JOSEPH MCMULLIN'S MOTION FOR COMPASSIONATE RELEASE [90] AND DISMISSING AS MOOT MCMULLIN'S MOTION PURSUANT TO THE FIRST STEP ACT [91]**

On June 4, 2012, Joseph McMullin pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 38). On September 27, 2012, the Honorable Julian Abele Cook, Jr. sentenced McMullin to fifteen years in prison, the minimum sentence mandated by the Armed Career Criminal Act, 18 U.S.C. § 924(e). (ECF No. 44, PageID.166.).

On August 17, 2020, McMullin filed a Motion for Appointment of Counsel and Production of Medical Records [89] and a Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) [90]. These were in addition to an earlier Motion [91] that McMullin had filed pursuant to the First Step Act. The Court appointed counsel, ordered briefing and production of records, and scheduled a hearing. (ECF

No. 92). That hearing was held on September 30, 2020. For the reasons outlined below, McMullin's Motion for Compassionate Release [90] will be **GRANTED**.

## BACKGROUND

McMullin was born in 1969 in Detroit, MI. (PSR ¶ 58). After his parents' divorce, McMullin primarily lived with his mother, and the two remained close until her death in 2000. (*Id.*). McMullin only saw his father on weekends as a child, however, their relationship at the time of his PSR interview was good. (*Id.*). McMullin also has an adult daughter with whom he keeps in touch. (PSR ¶¶ 61).

McMullin's education and employment history are limited. McMullin dropped out of high school in the twelfth grade after being suspended but eventually obtained his GED. (PSR ¶¶ 71-72). In the five years leading up to his arrest for the instant offense, McMullin alternated between unemployment, self-employment, temporary employment, and incarceration. (PSR ¶¶ 74-79). He has expressed an interest in furthering his education upon release. (PSR ¶ 100).

McMullin's criminal record—ten felonies and two misdemeanors—is responsible for the armed career criminal enhancement he received at sentencing. (PSR ¶ 100). McMullin was arrested for his current offense after being stopped by Detroit Police Department Officers in a residential neighborhood. (PSR ¶ 11). They were in the area responding to a breaking and entering call and had found him carrying a beer in a paper bag nearby. (PSR ¶¶ 11-12). After frisking him, the officers

discovered a gun in his waistband. (ECF No. 58, PageID.316). They arrested him when he told them he did not have a permit for the gun. (ECF No. 58, PageID.317).

McMullin is currently fifty-one years old, incarcerated at Butner Medium II FCI, and scheduled for release on April 5, 2024. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 45825-039) (last visited Oct. 6, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction.
> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On July 10, 2020, McMullin submitted a request for compassionate release to the warden of FCI Butner Medium II, citing his age and underlying health conditions. (ECF No. 88). Although the Government initially seemed to doubt whether McMullin had truly submitted such a request, it conceded at the hearing that the exhaustion requirement of § 3582(c)(1) had been satisfied. (ECF No. 94, PageID.536).

 "The Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [McMullin] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

B. Extraordinary and Compelling Reasons for Release

In order to ascertain whether there are extraordinary and compelling reasons to release Brown, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.

§ 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> 
>   **(A) Medical Condition of the Defendant.**—
>   - **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   - **(ii)** The defendant is—
>     - **(I)** suffering from a serious physical or medical condition,
>     - **(II)** suffering from a serious functional or cognitive impairment, or
>     - **(III)** experiencing deteriorating physical or mental health because of the aging process,
>     
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>   
>   [. . .]
>   
>   **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13. Here, McMullin has presented "Other Reasons" in combination with "Medical Condition[s]" to warrant compassionate release.

There are currently four confirmed cases of COVID-19 among inmates at Butner Medium II FCI, up from two at the time of McMullin's hearing on September

30. *See COVID-19 Coronavirus*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/2NYL-EGFG] (last updated Oct. 5, 2020). Eight inmates and two staff members are marked as recovered. *Id.*

McMullin suffers from Type II diabetes, chronic kidney disease, hyperlipidemia, and hypertension. (ECF No. 96, PageID.810-11). The Government concedes that, "[g]iven the heightened risk that Covid-19 poses to someone with those medical conditions, McMullin has satisfied the first eligibility threshold for compassionate release." (ECF No. 94, PageID.548).

### C. Dangerousness

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Government concedes that there are extraordinary and compelling reasons for compassionate release, it argues that McMullin is nevertheless ineligible for release because he remains a danger to the community. The Government points specifically to McMullin's criminal record, which though not entirely free of violence, mostly reflects drug-related offenses. (ECF No. 94, PageID.550-51). The Government also notes that McMullin has had several disciplinary incidents while in custody, that McMullin was on probation when he was arrested for the instant offense, and that the BOP has designated McMullin a high risk. (*Id.*).

McMullin argues that four of his five disciplinary incidents were for minor issues like refusing to obey an order or "insolence." (ECF No. 93, PageID.521-22). The fifth and most recent, he concedes, was a fight, however, he argues that he was defending himself against the instigator. (ECF No. 93, PageID.522). This explanation is consistent with the BOP's records of the incident. (ECF No. 96, PageID.559). Moreover, while the Government is correct that McMullin does have a lengthy record—indeed, that was the reason he received the fifteen-year mandatory minimum—his current offense was not of a violent nature and he has spent the last a decade in prison learning from his mistake. This was his first time in federal custody and his longest prison sentence by far. Since being incarcerated, he has completed several life skills courses like anger management, nutrition, and finance, as well as the Drug Education program. (ECF No. 96, PageID.561-62). He has also been entrusted to work as a butcher by the BOP, for which he is required to wield dangerous objects. This education and employment over the last ten years, combined with McMullin's testimony at the hearing, persuade the Court that he has made substantial progress in prison.

Additionally, McMullin has two things going for him now that he did not have at the time of his arrest. When McMullin was arrested, he was both homeless and unemployed. (PSR ¶¶ 13, 74). Today, McMullin has a family member, his cousin, who is willing to support his reentry and provide him with a safe place to live. (ECF

No. 93, PageID.523). McMullin also has a job waiting for him at a telecom company. (*Id.*). These are major assets for an individual in McMullin's position and demonstrate that he will have the resources necessary to live a life free of crime upon release.

Accordingly, while McMullin's criminal history and past parole violations do not reflect positively on his record—indeed, they are likely responsible for his high-risk recidivism rating—the reality is that he is an older man now with serious medical conditions. He has learned from his mistakes and has the tools and resources necessary to succeed upon release. The Court thus finds that he would not present a danger to the community.

Section 3553(a) Factors

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;

>     **(C)** to protect the public from further crimes of the defendant; and
>     **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
>     **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>     [. . .]
> **(5)** any pertinent policy statement—
>     [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Government argues that even if the Court deems McMullin not to be dangerous, he should nevertheless be disqualified for release under the § 3553(a) factors. (ECF No. 94, PageID.553).

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the September 30, 2020 hearing. McMullin's record in prison demonstrates to the Court that he has made great strides in rehabilitating himself and that he has acquired valuable life skills, such as anger management, which will help stay on the right track upon release. Thus, although McMullin's criminal history and the nature and circumstances of his offense make it clear to the Court that he was dangerous at the time of sentencing, the Court finds that he is no longer dangerous today.

Furthermore, McMullin has already served approximately a decade in prison—about seventy percent of his fifteen-year mandatory minimum. This period of incarceration, far greater than any he had been sentenced to previously, was the wake-up call McMullin needed to learn respect for the law. It will provide a significant deterrent both to himself and to others.

Accordingly, a sentence reduction to time served is consistent with the § 3553(a) factors.

### CONCLUSION

**IT IS ORDERED** that McMullin's Motion for Compassionate Release [90] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that McMullin's Motion Pursuant to the First Step Act [91] is dismissed as **MOOT**.

**IT IS FURTHER ORDERED** that McMullin be **IMMEDIATELY RELEASED** to begin his two-year term of **SUPERVISED RELEASE**, as provided in the November 5, 2013 Amended Judgment [56], and including the following Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**
>
> **The defendant shall participate in a program approved by the Probation Department for mental health counseling. If necessary.**

**The defendant shall participate in a program approved by the Probation Department for substance abuse, which may include testing to determine if the defendant to determine if the defendant has reverted to the use of drugs or alcohol.**

**SO ORDERED**.

Dated: October 7, 2020

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Senior United States District Judge